IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-0170-PAB

KAREN S. DEGENHART,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

    Defendant.

---

**ORDER**

---

This matter comes before the Court on plaintiff Karen S. Degenhart's Complaint [Docket No. 5] filed February 4, 2008. Plaintiff, who represents herself in this appeal, seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33, and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-83c. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[1]

**I. BACKGROUND**

Ms. Degenhart filed an application for disability benefits on August 11, 2004, alleging she was unable to work after August 2, 2002. R. at 55. After Ms. Degenhart's

---

[1] By letter to the Court dated September 10, 2009 [Docket No. 44], Ms. Degenhart requested that her appeal be decided without a hearing.

claim was initially denied, an administrative law judge ("ALJ") held a hearing on July 27, 2006. R. at 55, 358. In a decision dated August 9, 2006, the ALJ found that "the evidence shows that the claimant has severe impairments consisting of attention deficit disorder, personality disorder (with borderline and avoidant traits), and an affective disorder with varying diagnoses of mood disorder, dysthymia and major depression." R. at 56. The ALJ, however, concluded that Ms. Degenhart retained the functional capacity to perform jobs existing in significant numbers in the economy and, therefore, was not disabled as defined by the Act. R. at 61. On November 29, 2007, the Appeals Council declined review, making the ALJ decision the final decision of the Commissioner.[2] R. at 5.

## II. ANALYSIS

### A. Standard of Review

Ms. Degenhart's arguments on appeal, at least in part, request that this Court re-weigh the record evidence. Review of the Commissioner's finding that a claimant is not disabled, however, is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because it may have reached a different

---

[2]On April 8, 2008, Ms. Degenhart filed a new application for supplemental security income to the Social Security Administration. Because this appeal was pending at the time of such filing, Ms. Degenhart agreed to change the onset date of her disability from August 11, 2004 to April 8, 2008, the date she filed her second application for benefits. [Docket No. 36]. The ALJ granted Ms. Degenhart's application for benefits on November 18, 2008. However, that ruling does not moot the current appeal. *See* Order [Docket No. 37] and Def.'s Status Report [Docket No. 41].

result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).[3]

### B. Evaluation of the ALJ's Decision

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2).

Furthermore,

[a]n individual shall be determined to be under a disability only if his physical

---

[3]In short, the Court stresses, for the benefit of the pro se plaintiff, that a finding that a denial of benefits was supported by "substantial evidence" is not a conclusion that the plaintiff's contentions are implausible. Again, that a different conclusion could have been supported by the record is not the standard of review.

> or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 248, 250 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform

himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

Here, the ALJ proceeded through each step of the evaluation process and, ultimately, concluded that Ms. Degenhart had severe impairments that did not "meet or equal the requirements set forth in the Listings of Impairments." R. at 56. He did find that her impairments prevented her from doing her past relevant work. At the final step of the analysis, however, the ALJ found that the Commissioner had met his burden of showing that Ms. Degenhart retained the RFC to perform work in the national economy.

Ms. Degenhart has raised a number of objections to the ALJ's determination that she retains the ability to work.[4] Her submissions to this Court can be fairly read to raise the following main objections to the finding of no disability: (1) that the ALJ erred by failing to give controlling weight to Dr. Harry L. Kirk's opinion; (2) that the ALJ relied on erroneous factual information; and (3) that the ALJ's reliance on the testimony of the vocational expert ("VE") was misplaced.[5] Ms. Degenhart also presented additional evidence to the Appeals Council and to this Court for review.

*1. Weighing the Medical Evidence*

Ms. Degenhart argues that the ALJ should have relied upon the opinion of her

---

[4] Because Ms. Degenhart appears pro se in this action, her "pleadings [have been] construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[5] Ms. Degenhart also argues that her claim was prejudiced by the incorrect omission of depression from the impairments listed on her original application. The ALJ, however, included "an affective disorder with varying diagnoses of mood disorder, dysthymia and major depression" in the list of impairments evidenced by the record. R. at 56.

treating psychiatrist, Dr. Harry Kirk, when assessing her eligibility for disability benefits. When addressing a claim, "[a]n ALJ should generally give more weight to opinions from claimant's treating sources." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotation marks, alteration marks, and omission marks omitted). To determine whether a treating physician's opinion is entitled to controlling weight, the ALJ

> must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is 'no,' then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. If the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quoting *Watkins*, 350 F.3d at 1300) (alteration marks omitted); *see also* 20 C.F.R. § 416.927(d)(2).

Where a treating physician's opinion is not entitled to controlling weight, it is still entitled to deference and should be weighed in light of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins,* 350 F.3d at 1300-01; see 20 C.F.R. § 416.927(d); Social Security Ruling 96-2p, 1996 WL 374188. "After considering the pertinent factors, the ALJ must give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Watkins,* 350 F.3d at 1301 (10th Cir. 2003) (quoting 20 C.F.R. §

404.1527(d)(2)) (internal quotation marks and alteration marks omitted).  Furthermore, "if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." *Id.* (internal quotation marks omitted).

Here, the ALJ explained his bases for giving little weight to Dr. Kirk's opinion that Ms. Degenhart had a Global Assessment of Functioning ("GAF") score of 40. Essentially, the ALJ determined that, while Dr. Kirk – who worked at the Jefferson Center for Mental Health – had been one of Ms. Degenhart's treating physicians, the frequency and nature of that treatment was minimal.  The ALJ noted that Dr. Kirk "saw the claimant only once in November 2005." R. at 60.  Ms. Degenhart takes issue with this claim, arguing that she saw Dr. Kirk more than once.  The record does indicate that she had a second visit with Dr. Kirk in February of 2006 regarding her prescriptions.  R. at 280, 372-73.  The November visit, however, was the only one Dr. Kirk and Ms. Degenhart deemed to be substantive.  On a form entitled Medical Assessment of Work-Related Activities (Mental) dated March 30, 2006, Dr. Kirk was asked to "[d]escribe any limitations and the medical/clinical findings that support this assessment . . . ." R. at 274.  In response, he commented that he "only saw her one time, and diagnosis remains tentative . . . ." R. at 276; *see* R. at 274 (describing Ms. Degenhart during "[t]he one time I saw her").  Furthermore, during the hearing, Ms. Degenhart testified regarding her two visits to Dr. Kirk as follows: "[T]he first time I talked to him at length and then one more time I came in just to kind of check up on what I felt about a medication idea he had and then it was shorter." R. at 372-73.

In light of this record evidence, the ALJ did not err in considering the relatively limited time Dr. Kirk spent treating Ms. Degenhart in weighing Dr. Kirk's opinion

7

evidence. Moreover, the length of the treatment was not the only factor the ALJ considered when weighing Dr. Kirk's opinion. He cited "other records from the Jefferson Center for Mental Health" that he determined failed to support Dr. Kirk's opinion about the severity of Ms. Degenhart's functional limitations. R. at 60.[6] For instance, the Jefferson Center records indicated "GAF scores of 60 of 61." R. at 60. The reports of her counseling sessions evidence some progress over the relevant time period. Furthermore, the ALJ relied on the testimony of a medical expert at the hearing regarding the functional capacity indicated by Ms. Degenhart's medical file. The ALJ also separately considered medical evidence in the form of consultative evaluations by two other doctors.[7] R. at 59. Relying on this evidence, the ALJ concluded that Ms. Degenhart retained a greater RFC than Dr. Kirk's GAF score would suggest. In short, there was substantial evidence supporting the ALJ's determination, and the ALJ applied the correct legal standards when weighing the evidence and articulating his conclusions. It is not within this Court's authority to re-weigh the evidence, as Ms. Degenhart essentially requests in her appeal.

---

[6]The ALJ also afforded little weight to the opinion of Dr. Katherine Drapeau, Ms. Degenhart's family practitioner. R. at 60. The ALJ considered that Dr. Drapeau's conclusion regarding Ms. Degenhart's ability to work was provided "without explanation" and relied upon Dr. Kirk's assessment. *Id.* Furthermore, the ALJ considered the frequency of the medical visits and the expertise of the physician in weighing the opinion. *Id.*

[7]Ms. Degenhart contends that the ALJ relied on medical opinions relating to the time period before her August 11, 2004 claim date. *See* Docket No. 5. She applied for benefits, however, with a disability onset date of August 2, 2002.

*2. The ALJ's Factual Mistake*

Ms. Degenhart contends that the ALJ misread the record and, consequently, relied upon an erroneous factual determination.

When assessing the claimant's claim that she is unable to retain employment because of her mental impairments, the ALJ discussed a part-time position Ms. Degenhart held at an alternative school during the 2005-2006 school year. R. at 58. Ms. Degenhart was not rehired for the subsequent school year. The ALJ noted that there was no indication that her non-renewal was for inadequate performance. *Id.* He then added: "But interestingly, attached to this letter is a record from the Colorado Bureau of Investigation stating that the claimant had failed to disclose a prior arrest. This suggests an alternative reason for the termination of her employment." *Id.* In fact, it does not. Rather, the record to which the ALJ refers is a fingerprint report which states that "a search of the fingerprints on the above individual has failed to disclose prior arrest." R. at 206. There is a line break between "above" and "individual"; it appears the ALJ read only the second line.[8]

---

[8]Ms. Degenhart argues that this mistake evidences the ALJ's bias against her. The Court finds no basis to find that this mistake was anything other than a misreading of the record. *Cf. United States v. Walker,* 920 F.2d 513, 517 (8th Cir. 1990) ("Even if a few of the [judge's] comments may have been unnecessary, a few improper comments do not merit reversal."). Contrary to Ms. Degenhart's assertions, the ALJ's mistake "do[es] not evidence reliance on extrajudicial information nor do[es it] 'display clear inability to render fair judgment.'" *St. Anthony Hosp. v. U.S. Dept. of Health and Human Servs.*, 309 F.3d 680, 713 (10th Cir. 2002) (quoting *Liteky v. United States,* 510 U.S. 540, 551 (1994)).

She also contends that her case was prejudiced by her inability to afford expert witnesses of her own to contest the medical expert and VE relied upon by the ALJ. Ms. Degenhart was represented by counsel at the hearing before the ALJ. Her counsel submitted evidence of her treating sources' opinions to the ALJ, and there is no indication in the record that Ms. Degenhart was prevented by the ALJ from submitting

Ms. Degenhart is understandably troubled by the inaccurate implication that she has an arrest record and concealed it. The record, however, does not warrant upsetting the ALJ's decision on account of the mistake. The ALJ made the erroneous statement in the context of assessing her capacity to work. The credibility determination was based on a comparison of her subjective reports regarding her condition with the medical evidence in the file. *See* R. at 57 ("While the evidence supports the existence of the above stated severe medical impairments, the claimant's allegation that her impairments produce symptoms and limitations of sufficient severity to prevent all sustained work activity is inconsistent with the medical and other evidence of record and is not considered fully credible."). The ALJ's decision reflects a consideration of "all of the available evidence" including "the medical opinions of [her] treating source and other medical opinions" and an evaluation of her "daily activities." 20 C.F.R. § 404.1529(c)(1) & (3)(i). Furthermore, the ALJ was correct in noting that the record is unclear regarding the reason for the non-renewal of her job. The coordinator of the alternative school referenced Ms. Degenhart's exhaustion and stress levels at the end of her part-time work shifts. The coordinator, however, concluded that Ms. Degenhart did not have the "emotional strength" to do the job full time, and Ms. Degenhart has indicated that she was not re-hired at least in part due to a changed policy requiring certification. R. at 17, 322.

---

any relevant documentary or live testimonial evidence. She had the burden of providing evidence of her disability. 20 C.F.R. § 404.1512, and nothing in the record seriously calls into question whether the ALJ complied with his "basic duty of inquiry to fully and fairly develop the record as to material issues." *Baca v. Dept. of Health and Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993).

Moreover, to the extent the mistake improperly impacted the ALJ's weighing of the evidence surrounding non-renewal of Ms. Degenhart's position at the school, the effect was immaterial. The ALJ ultimately concluded that Ms. Degenhart was not capable of performing her past work, which would include the position at the alternative school. R. at 58. Therefore, while his mistake led him to speculate as to a possible alternative reason for her non-renewal, he resolved the doubt in her favor when assessing her capacity to perform her past work. In any event, the ALJ's evaluation of Ms. Degenhart's RFC is supported by substantial evidence to which he cites in explaining his conclusions. In other words, the mistake does not otherwise undermine the existence in the record of "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion," *Flaherty*, 515 F.3d at 1070, that Ms. Degenhart retained the RFC to perform unskilled work.

### 3. Reliance on Vocational Expert

Ms. Degenhart also challenges the ALJ's reliance on the VE at the final step of the evaluation process. She contends that the VE never spoke to her or took into account her own personal interests.[9] *See* Docket No. 19, at 2-3; Docket No. 30, at 4. Ms. Degenhart misunderstands the VE's role in such proceedings, essentially arguing that the VE was required to serve as a vocational counselor. The Court sympathizes with Ms. Degenhart's misunderstanding of the VE's role, as the Social Security Act and the standards for applying it are complex and difficult to unravel. *See Schweiker v. Gray*

---

[9]She also expressed her surprise to the Appeals Council that the VE "only focused on if the work environment was quiet enough[.]" R. at 14. The hearing transcript clearly demonstrates, however, that noise was only one aspect of the ALJ's questioning of the VE. R. at 403-06.

*Panthers*, 453 U.S. 34, 43 (1981) ("The Social Security Act is among the most intricate ever drafted by Congress."). There is, however, nothing before this Court calling into question the ALJ's reliance on the VE's testimony in assessing the final step of the evaluation process. The ALJ posed a hypothetical question to the VE, framing it in terms of an individual with limitations of the sort the ALJ determined to be present in Ms. Degenhart's case. The ALJ was not required to include limitations he had "not accepted . . . as supported by the record." *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995); *see Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (stating that the claimant "is correct that hypothetical questions in this context must reflect with precision all his impairments, but they need only reflect impairments and limitations that are borne out by the evidentiary record") (citations omitted).[10]

### 4. Additional Evidence

Ms. Degenhart submitted additional evidence to the Appeals Council after the denial of benefits by the ALJ. R. at 8. The Appeals Council added the evidence to the record and, in denying to review the denial of benefits, "considered . . . the additional evidence . . . ." R. at 5. The Tenth Circuit has stated that "the Appeals Council must consider evidence submitted with a request for review if the additional evidence is (a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision." *Chambers v. Barnhart,* 389 F.3d 1139, 1142 (10th Cir. 2004) (internal

---

[10]Ms. Degenhart also challenges the VE's reliance on a 1991 edition of the Dictionary of Occupational Titles ("DOT"). It is not clear on what she bases this assertion. In any event, she does not argue that the definitions in the DOT have materially changed or that the statistics provided by the VE on the number of available jobs for each title were not up to date.

quotation marks and alteration marks omitted).[11]  If the evidence does not meet the tripartite rule stated in *Chambers,* "it plays no further role in judicial review of the Commissioner's decision." *Id.* (citations omitted).

In the evidence Ms. Degenhart submitted to the Appeals Council consists of letters written by Allan Brock Willett, MD, Linza G. Douglas, LPC, and Katherine Drapeau, DO, and records from the Jefferson Center for Mental Health from both before and after the ALJ's August 9, 2006 opinion.

In his September 13, 2006 letter, Dr. Willett reported that he had taken over for Dr. Kirk and had evaluated Ms. Degenhart the same day as his letter.  R. at 319.  He found her unable to acquire and keep employment due to her condition and gave her a GAF of 45.  *Id.*  As an initial matter, the letter is not clearly from the relevant time period.  Chronologically relevant evidence "relates to the period on or before the date of the decision." *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir. 1994).  On its face, Dr. Willett's diagnosis arises out of his evaluation of Ms. Degenhart on September 13, 2006.  To the extent the letter is based on a review of her records under Dr. Kirk's care, it would be somewhat "duplicative and cumulative." *See Lawson v. Chater,* 83 F.3d 432, 1996 WL 195124, at *2 (10th Cir. Apr. 23, 1996) (unpublished table opinion) (citing *Wilkins v. Sec'y, Dep't of Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir. 1991)).  Taken as a whole, however, the letter can be reasonably read, at least in part, as an additional treating source's opinion regarding her condition during the relevant time period.  Nevertheless, in light of the ALJ's stated reasons for rejecting Dr. Kirk's opinion

---

[11]*See id.* ("Whether evidence qualifies as new, material and chronologically relevant is a question of law subject to . . . de novo review.").

and his reliance on other medical opinions and records, I do not find Dr. Willet's letter to be material.  It does not create a "reasonable possibility" of a different outcome, a requirement of the tripartite test.  *See id.,* 1996 WL 195124, at *2 ("Evidence is material to the determination of disability if there is a reasonable possibility that [it] would have changed the outcome.") (citing *Wilkins,* 953 F.2d at 96).

Ms. Degenhart's therapist, Ms. Douglas, wrote a September 7, 2006 letter indicating that, in light of Dr. Kirk's assessment, she changed Ms. Degenhart's GAF to a 45, which she "believe[s] is far more realistic than the 61" reported on the earlier records reviewed by the ALJ. R. at 320.  The ALJ, however, found that GAF to be inconsistent with the reports of "significant and ongoing daily activities despite the claimant's mental complaints."  R. at 60.  Therefore, while Ms. Douglas' letter provides an additional treating source's opinion regarding the appropriate GAF, I do not find that "there is a reasonable possibility that [it] would have changed the outcome" of the ALJ's decision.  Furthermore, to the extent Ms. Douglas' letter reflects her opinion regarding Ms. Degenhart's condition as of September 2006, it is not chronologically relevant.

Dr. Drapeau wrote on April 13, 2007 that "Ms. Degenhart is unable to get or hold a job because of the . . . disorders" diagnosed by the treating professionals at Jefferson Center for Mental Health. R. at 357.  Dr. Drapeau's letter relates the diagnoses made at the Jefferson Center for Mental Health and asserts that Ms. Degenhart cannot work due to those chronic conditions.  The substance of her opinion, in the form of a Treating Physician's Report of April 2006, was considered by the ALJ and rejected.  R. at 60.  It is, therefore, neither new nor material.

The newly submitted records provided to the Appeals Council predating the

ALJ's decision are consistent with those reviewed by the ALJ. As such, they do not constitute "new" evidence. Moreover, it appears that Ms. Douglas did not change Ms. Degenhart's GAF score until August 22, 2006. R. at 328. Insofar as the records relate to changes after the ALJ decision, the evidence is not chronologically relevant.[12]

Ms. Degenhart has also submitted additional evidence to this Court in the form of a January 22, 2008 letter by Dr. Willett and medical records from the Mountain Family Health Centers.[13] Both the letter and the medical records focus on the period after the ALJ's opinion, and the records provide little insight into the impairments at issue here.

## III. CONCLUSION

Upon consideration of the plaintiff's objections and of the record as a whole, I find that the ALJ applied the correct legal standards and reached a decision supported by substantial evidence. Accordingly, it is

**ORDERED** that the August 9, 2006 decision of the Commissioner that plaintiff was not disabled is **AFFIRMED**. It is further

**ORDERED** that the Clerk shall forthwith enter judgment in favor of defendant Commissioner and against plaintiff Karen Degenhart.

---

[12] Furthermore, new and material evidence can only be considered if "there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

[13] Ms. Degenhart also reports having "on and off pain in [her] right hip joint" that affects her daily functioning. Docket No. 20. This was not an aspect of her claim for disability. *Id*. Furthermore, it appears to be chronologically irrelevant. *See id.* ("I have already submitted my Brief for my Civil Case. However, since then I have had a new issue come up that is important for the case."); Docket No. 21, at ¶ 71 ("I now have developed a hip problem, making it impossible to do any full time work involving lots of walking or standing.").

DATED October 28, 2009.

                                  BY THE COURT:

                                  s/Philip A. Brimmer
                                  PHILIP A. BRIMMER
                                  United States District Judge